clauses do not of themselves vitiate the deed under the statute of Rhode Island. The result is, that the bill must be dismissed, with costs.

## Case No. 6,445a.

### HEYE v. LIEMAN.

[8 Betts, D. C. MS. 69.]

District Court, S. D. New York.   Nov. 23, 1846.

PLEADING—MISTAKE—REPLEADER—PUIS DARREIN CONTINUANCE.

[Where, through the misapprehension or inadvertence of defendant's attorney, a mistake is made in a plea of puis darrein continuance, and not discovered until the trial, defendant will be allowed a repleader, but on condition of paying all costs, he having ample means to ascertain the proper evidence in defense.]

[This was an action at law by Herman Heye against George H. Lieman for a balance of account.].

BETTS, District Judge.   A verdict was taken in this case at the last September term, in favor of the plaintiff, for $53.85, as the balance of accounts, subject to the opinions of the court on a case to be made, and subject to an application by the defendant for a repleader.   The defendant does not now offer to argue the case, conceding that, upon the issues tried, the verdict cannot be impeached; but he moves, on affidavits and the state of pleadings, for leave to withdraw a plea of puis darrein continuance, interposed by him in November, 1845, and for a repleader.   The ground of the application for a repleader is that the defendant's attorney misapprehended the purport of a receipt or acknowledgment given him by the plaintiff, written in the German language.   He pleaded a full account and satisfaction of the debt, after suit brought, by the delivery of certain bills of exchange to the plaintiff, referred to in that receipt.   He now alleges it was discovered on the trial that the said acknowledgment did not amount to a present accord and satisfaction, but admitted the deposit of the bills of exchange with the plaintiff to be in satisfaction of the debt when paid. The motion is therefore to change the form of the pleading so as to present the defence in this new aspect.

The plaintiff relies upon various English authorities as settling the doctrine that a repleader cannot be allowed after plea puis darrein continuance.   Brown, Abr. "Repleader," B. N. P. 309; Cro. Eliz. 49; 1 Chit. Pl. 638; Bac. Abr. "Repleader," M, 2.   And it will not be granted unless the first issue is immaterial (2 Saund. 319, note 6; 1 Ld. Raym. 167; Willes, 532), or in favor of a party making the first default (1 Ld. Raym. 170).   The practice of the United States courts under the powers incident to them and the spirit of the 32d section of the judiciary act of 1789 [1 Stat. 91] has been of a more liberal charac-

ter in respect to amendments than is the usage of the English common law courts, or courts pursuing closely their system of practice.   Smith v. Jackson [Case No. 13,065].   The exercise of the power, when not restrained by positive rules, is regarded as resting wholly in the discretion of the courts.   [Mandeville v. Wilson] 5 Cranch [9 U. S.] 15; [U. S. v. Buford] 3 Pet. [28 U. S.] 12; [Jackson v. Ashton] 10 Pet. [35 U. S.] 480; Calloway v. Dobson [Case No. 2,325]; Smith v. Jackson [supra].   Courts will not scrutinize the necessity or utility of a proposed amendment, farther than to see that it is not frivolous. 4 Cowen, 555.   In view of the ordinary practice of the United States courts on this subject, I think the defendant ought not to be excluded from the privilege of an amendment.   If the misapprehension or inadvertency of his attorney might have been corrected with due diligence before trial, that circumstance should not operate as an absolute interdiction of relief to the party himself.   He must, however, expect, when he asks favors under circumstances like the present, and where his own proceedings have imposed great delay and cost on the opposite party, to find the terms on which relief will be granted more rigorous than in ordinary applications.   After his plea of puis darrein continuance, and the return of the commission sent abroad under it, several terms elapsed before the actual trial, so that not only the plaintiff was further delayed in his proceeding, but the defendant had the most ample means of ascertaining precisely what evidence he could give in support of his plea. The defendant is allowed to amend his plea puis darrein continuance, on the payment to the plaintiff of all the costs which have accrued since that plea was interposed, and on such payment of costs the verdict will be set aside, and a new trial awarded.   If the costs are not paid within twenty days after notice of this order, let final judgment be entered on the case for the plaintiff, with costs to be taxed.

## Case No. 6,446.

### HEYER et al. v. WILSON.

[2 Cranch, C. C. 369.] [1]

Circuit Court, District of Columbia.   April Term, 1823.

MARSHAL—NEGLIGENCE — CAPIAS AD RESPONDENDUM—AMERCEMENT.

1. If the marshal upon a capias ad respondendum be amerced debt and costs nisi, the defendant may, on or before the next term, give bail and exonerate the marshal.

2. If the bill of exchange, which was the original cause of action be lost, it is sufficient (in order to amerce the marshal in the whole amount of debt and costs, for not bringing in the defendant arrested upon a capias ad respondendum,) to tender to the marshal an as-

[1] [Reported by Hon. William Cranch, Chief Judge.]

signment of the right of action upon the bill, and that assignment may be made by the attorney and agent of the plaintiff.

[This was a suit by Heyer and Bremner against David Wilson.] The late marshal (Boyd) had been amerced damages and costs, for not bringing in the defendant whom he had arrested upon a capias ad respondendum. Notice having been served upon R. Wallach, the administrator of the late marshal, to show cause why the judgment should not be final,

Mr. Wallach showed for cause that no tender had been made of the original cause of action, (an accepted bill of exchange.)

Mr. Dunlop, for plaintiffs, produced the affidavit of Mr. Brent, the clerk of this court, showing that the original bill which had been filed in the suit against one Hyatt, had been sought for, but could not be found, and an assignment of the right of action signed by Mr. Key and Mr. Dunlop, attorneys and agents of the plaintiffs. Whereupon the court, at the last term, ordered the judgment to be entered against the administrator of the late marshal for the full amount of debt and costs, "nisi," the second day of the (then) next term (that is, the present term), according to the Maryland act of 1794, c. 54, § 2, for not bringing in the body of the defendant according to the tenor of the marshal's return.

Upon the second day of the present term, Mr. Swann, for defendant, offered bail for the defendant, Wilson.

Mr. Dunlop, for plaintiffs, objected that it was now too late.

But THE COURT (nem. con.) permitted the bail to be given, and ordered the judgment to be rescinded.

---

# Case No. 6,447.

## In re HEYS.

[1 Ben. 333;[1] 1 N. B. R. 21; Bankr. Reg. (Supp.) 5; 6 Int. Rev. Rec. 52; 36 How. Pr. 249.]

District Court, S. D. New York. Aug., 1867.

BANKRUPTCY PRACTICE—TIME OF NOTICE OF FIRST MEETING.

Where all the creditors of a bankrupt resided in Germany, and the register fixed the first meeting of creditors at sixty days from the date of the warrant: *Held*, that, under the eleventh section of the bankruptcy act [of 1867 (14 Stat. 521)], the fixing of the time for the first meeting is a matter of discretion with the register; that ninety days' time is to be allowed in cases where the creditors live so far away as to make such an interval a reasonable time.

---

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

There is nothing to show that the register did not exercise his discretion wisely in this case.

In this case, all the creditors of the petitioner [Julius Heys], some eight or ten in number, were foreigners residing in Germany. On the return day named in the order of reference, the petitioner requested the register to fix a day twenty days from such return day, as the day for the first meeting of creditors. The register decided that sixty days' time from the date of the warrant, when issued, was the shortest time that could reasonably be named in the warrant for the first meeting of creditors, and that notices should be sent by mail to the creditors by the messenger, properly directed, and with the foreign postage prepaid. The petitioner contended that the clause in the eleventh section of the bankruptcy act, concerning service of notice on creditors by mail or personally, refers only to creditors residing within the United States, and that creditors residing out of the United States are, under that section, to be notified constructively, by the publication of notice in the newspapers specified in the warrant. On the application of the petitioner, the register certified the proceedings to the judge, for his decision thereon.

BLATCHFORD, District Judge. The register was correct in his decision. The eleventh section of the act requires that the warrant shall authorize the messenger to publish notices in such newspapers as the warrant specifies, and to serve written or printed notice, by mail or personally, on all creditors upon the schedule filed with the debtor's petition, or whose names may be given to him in addition by the debtor. The same section then goes on to specify what particulars the notice so to be served shall state. One of those particulars is, that a meeting of the creditors of the debtor will be held "at a time and place designated in the warrant, not less than ten nor more than ninety days after the issuing of the same." This allowance of as much time as ninety days, in connection with the absolute requirement that notice shall be served, by mail or personally, on all creditors, shows clearly that it was the intention of congress, that as much as ninety days' time between the issuing of the warrant and the first meeting of creditors shall be allowed in cases where the creditors reside so far away as to make such an interval a reasonable one. The fixing of the time is a matter of discretion, which it was the province of the register to exercise in this case, and there is nothing to show that he did not exercise it wisely in fixing sixty days' time.